

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-14-2004

# USA v. Patterson

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2402

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Patterson" (2004). *2004 Decisions.* Paper 707.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/707

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-2402
_____

UNITED STATES OF AMERICA,

v.

LARRY PATTERSON,

Appellant.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. No. 02-cr-00203-3
District Judge: The Honorable Edwin M. Kosik

_____


Submitted May 7, 2004 Under Third Circuit LAR 34.1(a)

BEFORE: SLOVITER and FUENTES, <u>Circuit</u> <u>Judges,</u> and POLLAK,[*] <u>District</u> <u>Judge</u>

(Filed May 14, 2004)
_____

OPINION OF THE COURT
_____

POLLAK, <u>District Judge</u>:

_____

  [*]Honorable Louis H. Pollak, District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Larry Patterson appeals from the District Court's judgment of sentence entered on May 5, 2003. In particular, Patterson challenges the District Court's three-level upward departure made pursuant to U. S. Sentencing Guidelines Manual § 4A1.3 (2002),[1] which was based on his considerable criminal history and what the District Court termed appellant's "propensity to recidivate." We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and (e).

## I.

On August 27, 2002, Patterson was named in counts 1 and 4 of a four-count indictment returned by a federal grand jury sitting in the Middle District of Pennsylvania. Count 1 charged that "[b]eginning on or about January 28, 2002, and continuing until on or about August 16, 2002," Patterson and two co-defendants conspired to "make, utter and possess counterfeited securities of the American Express Company . . ." in violation of 18 U.S.C. § 371. App. at 15A-16A. Count 4 charged that "[o]n or about August 12, 2002," Patterson "utter[ed] and possess[ed] a counterfeited security of the American Express Company . . ." in violation of 18 U.S.C. § 513.

On February 20, 2003, pursuant to a plea agreement, Patterson pled guilty to count 4 of the indictment. Patterson's presentence investigation report (PSR) revealed that he had 93 arrests resulting in 67 convictions, largely for a variety of nonviolent crimes such

---

[1] The 2002 edition of the United States Sentencing Commission Guidelines Manual was used to calculate Patterson's Offense Level and Criminal History Points.

as larceny and forgery. The great majority of the convictions did not enter into the calculation of Patterson's criminal history points because they reflected offenses occurring prior to the time periods established by the Sentencing Guidelines covering offense conduct which is to be "counted" in calculating a defendant's criminal history.[2] Patterson's countable criminal history netted a total of 22 criminal history points and a criminal history category of VI. The court accepted a stipulation between the parties that the amount of loss resulted in Patterson's total offense level of 10, producing a guideline range of 24-30 months imprisonment. The court then granted the government's motion for a two-level downward departure warranted by Patterson's substantial assistance, resulting in a guideline range of 18-24 months. Finally, the court departed upward by three levels, pursuant to the probation office's recommendation based on the extent of Patterson's prior record. Patterson's resulting guideline range was 27-33 months. The court sentenced Patterson to 30 months imprisonment, followed by three years of

---

[2]U.S.S.G. § 4A1.2(e) provides, in pertinent part, that:
(1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.
(2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.
(3) Any prior sentence not within the time periods specified above is not counted.
. . . .

U.S.S.G. § 4A1.2(e).

supervised release.  The court explained the upward departure in its statement of reasons:

> The Court finds that pursuant to U.S.S.G. § 4A1.3, an upward departure is warranted because the defendant's criminal history category significantly under-represents the defendant's past criminal conduct and inadequately captures his propensity to recidivate. Larry Patterson has 93 arrests resulting in 67 criminal convictions and 22 criminal history points.  He did not receive criminal history points for 56 of the convictions.  The vast majority of his arrests have been for conduct similar to the instant federal offense which involved the passing of fraudulent American Express checks and money orders.  The Court further finds that an upward incremental increase of one offense level for each additional three criminal history points exceeding 15 is appropriate.  This results in the addition of three offense levels and a guideline custody range of 27 to 33 months.[3]

Patterson now challenges the District Court's decision granting an upward departure.

## II.

---

[3] In adding "three offense levels" on the basis of its finding that "an upward incremental increase of one offense level for each additional three criminal history points exceeding 15 is appropriate," the District Court would appear to have been proceeding on the understanding that Patterson's criminal history points came to 24 (15 + 9).  But the District Court actually found that Patterson's criminal history points totaled 22 (not 24).  It is our supposition that the explanation for this arithmetic discrepancy (a discrepancy not addressed in either party's brief on appeal) is that the District Court meant to use 13, not 15, as the criminal history base-point above which the court would add one offense level for "each additional three criminal history points."  We suggest that 13 was the intended number, and 15 a typographical error, because Criminal History Category VI of the Guidelines Sentencing Table encompasses all those who have "13 or more" criminal history points.  In short, 13 is a significant number for purposes of applying the Sentencing Table, while 15 is not.  If 13 was the number the District Court intended as its base-point, then Patterson's total of 22 criminal history points would have been 9 in excess of that base-point, triggering the three-level increase in offense level which the District Court thought appropriate.

If either of the parties thinks the foregoing supposition is unfounded, application may be made to the District Court to resolve the issue.

4

The Supreme Court's decision in *Koon v. United States*, 518 U.S. 81, 91, 96-100 (1996) directed courts of appeals to review a district court's departure decision for abuse of discretion. The government contends, however, that *Koon*'s abuse-of-discretion review has been replaced by *de novo* review by virtue of the subsequently enacted "PROTECT Act" amending 18 U.S.C. § 3742(e). For purposes of this appeal, we need not decide which standard of review applies, because we would affirm the upward departure under either standard.

Section 4A1.3 of the Sentencing Guidelines provides, in pertinent part, that:

If reliable information indicates that the defendant's criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.
. . . .

The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a departure above the guideline range for a defendant with Criminal History Category VI may be warranted. In determining whether an upward departure from Criminal History Category VI is warranted, the court should consider that the nature of the prior offenses rather than simply their number is often more indicative of the seriousness of the defendant's criminal record. For example, a defendant with five prior sentences for very large-scale fraud offenses may have 15 criminal history points, within the range of points typical for Criminal History Category VI, yet have a substantially more serious criminal history overall because of the nature of the prior offenses. On the other hand, a defendant with nine prior 60-day jail sentences for offenses such as petty larceny, prostitution, or possession of gambling slips has a higher number of criminal history points (18 points) than the typical Criminal History Category VI defendant, but not necessarily a more serious criminal history overall. Where the court determines that the extent and

5

nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

. . . .

*Background:* *This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur. For example, a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct. Yet, the first defendant's criminal history clearly may be more serious. This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants. This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures.*

U.S.S.G. § 4A1.3 (emphasis in original).

The District Court, in determining that an upward departure was warranted, properly applied the principles announced in § 4A1.3.  *See United States v. Shoupe*, 988 F.2d 440, 445-46 (3d Cir. 1993) (describing guidance provided by § 4A1.3 to a district court's departure decision).  Patterson's argument to the contrary is without merit.  As the District Court aptly pointed out, Patterson's "criminal history category significantly under-represents [his] past criminal conduct and inadequately captures his propensity to recidivate."  Patterson's numerous early convictions for larceny and forgery– convictions

6

not "counted" in calculating his criminal history[4]– presaged the forgery offenses that predominate in his "counted" criminal history. And the crime whose sentence is here at issue– "uttering and possessing a counterfeited security"– is but a further chapter in a more-than-twenty-years record of criminal deceit. The District Court's three-level upward departure was warranted. The judgment of the District Court will be affirmed.

---

[4] See text, *supra*, at footnote 2.